IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Gene Edward Harrell, Jr., as the Personal Representative of the Estate of Gene Edward Harrell,<br><br>    Plaintiff,<br><br>vs.<br><br>Duke University Health System, Inc.,<br><br>    Defendant. | C.A. No. 7:07-813-HMH<br><br>**OPINION & ORDER** |

This matter is before the court on Duke University Health System, Inc.'s ("Duke") motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case to the Middle District of North Carolina. After review, the court grants Duke's motion to transfer.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Gene Harrell ("Harrell") was diagnosed with T-cell anaplastic large cell lymphoma in 1996. (Pl.'s Mem. Opp'n July 6, 2007, Mot. Dismiss 2.) In June 1996, he underwent surgery to remove thirty-two lymph nodes, and followed surgery with chemotherapy. (Id.) Harrell was asymptomatic until September of 2004, when he began experiencing enlarged nodes, night sweats, and weight loss. (Id.) A CT scan and biopsy in December 2004 revealed that the cancer had returned. (Id. 2-3.)

Harrell completed three cycles of chemotherapy and planned to undergo a stem cell transplant at Duke. (Id. 3.) However, prior to the stem cell transplant, Harrell was found to be anemic. (Pl.'s Mem. Opp'n July 6, 2007, Mot. Dismiss 3.) Consequently, he received a blood transfusion at Duke on March 27, 2007. (Am. Compl. ¶ 13.) Harrell had a blood-type of O

1

positive but was given a transfusion of blood-type A positive blood. (Id.) As a result of receiving A positive blood, Harrell allegedly suffered an adverse reaction which required hospitalization and treatment at Duke. (Pl.'s Mem. Opp'n July 6, 2007, Mot. Dismiss 3.) His adverse reaction delayed his stem cell transplant by several weeks. (Id.)

On January 21, 2006, Harrell died in South Carolina. (Id.) Before his death, he was allegedly "hospitalized several times in South Carolina for infections and other complications associated with the failure to receive his stem cell transplant in a timely manner." (Id.) The Plaintiff, Harrell's son Gene Edward Harrell, Jr., alleges that by giving Harrell type A blood, Duke breached its standard of care and proximately caused Harrell's damages, including pain and suffering, medical expenses, loss of income, and death. (Am. Compl. ¶ 14-15.)

On July 6, 2007, Duke filed a motion to dismiss on the ground that it is not subject to personal jurisdiction in South Carolina. In the alternative, Duke moved to transfer the case to the Middle District of North Carolina. The Plaintiff filed a response on July 26, 2007, and Duke replied on August 6, 2007. On August 10, 2007, the court granted the Plaintiff forty-five (45) days in which to conduct discovery on the issue of jurisdiction and dismissed Duke's July 6, 2007, motion to dismiss with leave to refile.

On November 9, 2007, Duke filed a second motion to dismiss or, in the alternative, to transfer. The Plaintiff filed a response on December 13, 2007. Duke filed a reply on December 21, 2007, and a memorandum of additional authority on December 31, 2007.

2

## II. DISCUSSION OF LAW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Duke moves to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. "When a court's personal jurisdiction over a defendant is contested, the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999). Normally, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). However, when "the parties have engaged in jurisdictional discovery and offered evidence beyond the pleadings and affidavits," as in the instant case, "the Plaintiff must establish personal jurisdiction by a preponderance of the evidence." Brown v. Geha-Werke GmbH, 69 F. Supp. 2d 770, 774 (D.S.C. 1999).

In order to assert personal jurisdiction over a non-resident defendant, the exercise of jurisdiction must be authorized by South Carolina's long-arm statute and must comport with the Fourteenth Amendment's due process clause. Tetrev v. Pride Int'l, Inc., 465 F. Supp. 2d 555, 558 (D.S.C. 2006). The South Carolina Supreme Court has interpreted South Carolina's long-arm statute[1] to extend to the constitutional limits imposed by the due process clause. See id. at 559; Sheppard v. Jacksonville Marine Supply, Inc., 877 F. Supp. 260, 265 (D.S.C. 1995). "Consequently, the statutory inquiry necessarily merges with the constitutional inquiry, and the

---

[1] S.C. Code Ann. § 36-2-802 authorizes general jurisdiction and § 36-2-803 authorizes specific jurisdiction.

two inquiries essentially become one." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (internal quotation marks omitted).

"Under the constitutional inquiry, a court has personal jurisdiction over those persons with sufficient minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Tetrev, 465 F. Supp. 2d at 559 (internal quotation marks omitted) (alteration in original). To assert jurisdiction based on activities unrelated to this lawsuit and thus satisfy the requirements of general jurisdiction, the court must find that Duke has had "systematic and continuous" contacts with South Carolina. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). In contrast, specific jurisdiction over a defendant exists when a suit arises out of a defendant's activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

The Plaintiff contends that both general and specific jurisdiction exist in South Carolina over Duke based on its contacts with South Carolina, including an affiliation with Beaufort Memorial Hospital ("BMH") in Beaufort, South Carolina; an affiliation with South Carolina Oncology Associates, P.A. in Columbia, South Carolina; ownership of Duke Home Infusion program, which provides services to South Carolina residents; and revenue generated from treating South Carolina patients. (Am. Compl. ¶¶ 8-12; Pl.'s Mem. Opp'n July 6, 2007, Mot. Dismiss 10-11; Pl.'s Mem. Opp'n Nov. 9, 2007, Mot. Dismiss 5-13.)

**1. Specific Jurisdiction**

In order for specific jurisdiction to exist, the controversy must "arise out of or relate to" the defendant's contacts with the forum state. Helicopteros Nacionales de Columbia, S.A., 466 U.S. at 414. Although the United States Court of Appeals for the Fourth Circuit has not adopted

one of the various approaches for making this determination, the most expansive "but for" test "is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." Hartford Cas. Ins. Co. v. JR Mktg., LLC, 511 F. Supp. 2d 644, 649 (E.D. Va. 2007) (internal quotation marks omitted). Despite the Plaintiff's argument that specific jurisdiction exists, this action does not arise out of or relate to Duke's contacts with South Carolina even under the most inclusive "but for" test.

Duke's contacts with South Carolina through BMH, South Carolina Oncology Associates, and Duke Home Infusion Services did not give rise to and do not relate to the alleged tort in this case. Harrell must demonstrate at a minimum that but for Duke's contacts with South Carolina, his claim would not have arisen. See id. However, the undisputed facts are that Harrell sought treatment at Duke in North Carolina because his insurer required it, not as a result of Duke's contacts with South Carolina. (Pl.'s Mem. Opp'n Nov. 9, 2007, Mot. Dismiss 17.) The fact that Harrell's cause of action and some of Duke's contacts with South Carolina both generally involve cancer treatment does not support a finding that Harrell's cause of action arises out of or relates to Duke's South Carolina contacts. Further, the fact that Harrell was a South Carolina resident who returned to South Carolina following his treatment is insufficient to support a finding of specific jurisdiction. See, e.g., Harlow v. Children's Hospital, 432 F.3d 50, 63 (1st Cir. 2005) ("Jurisdiction cannot be created by and does not travel with the plaintiff patient wherever []he goes."). Therefore, a specific jurisdiction inquiry is inappropriate.

## 2. General Jurisdiction

States may assert general jurisdiction over a defendant when the plaintiff's cause of action does not arise from the defendant's contacts with the forum state. Pursuant to South

5

Carolina's general-jurisdiction statute, "[a] court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action." S.C. Code Ann. § 36-2-802 (2003). In order to assert personal jurisdiction over Duke based on activities unrelated to its contacts with South Carolina the Plaintiff must prove that the defendant's contacts are "continuous and systematic" to support the exercise of general personal jurisdiction over the defendant. See Helicopteros Nacionales de Columbia, S.A., 466 U.S. at 415-16. These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945). Accordingly, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." ESAB Group, 126 F.3d at 623.

It is undisputed that Duke is a North Carolina health care corporation with its principal place of business in Durham, North Carolina. (Def.'s Mem. Supp. Nov. 9, 2007, Mot. Dismiss Ex. D (Robert Willis ("Willis") Aff. ¶ 3).) In addition, Duke has no bank accounts in South Carolina, does not pay taxes in South Carolina, does not own any property in South Carolina, does not maintain a place of business in South Carolina, does not maintain a registered agent in South Carolina, and does not render health care in South Carolina. (Id. Ex. D (Willis Aff. ¶ 3-11).)

In support of a finding of jurisdiction, the Plaintiff points to Duke's affiliations with BMH, South Carolina Oncology Associates, and Duke Home Infusion Services, and to Duke's payments from South Carolina Medicaid as a result of care rendered to South Carolina residents.

However, the court finds that these contacts do not rise to the level sufficient to assert general jurisdiction over Duke in South Carolina.

Duke's contact with BMH consists of an agreement in which Duke physicians provide advice and training to BMH physicians. (Def.'s Mem. Supp. Nov. 9, 2007, Mot. Dismiss 3.) Pursuant to this affiliation, Duke provides "Continuing Medical Education, steering committee membership, visits to [Duke] for BMH personnel, visits to BMH by [Duke] personnel, annual program reviews, sharing of policies and procedures, sharing of protocols, quality assurance/improvement reviews, and construction and design advice." (Id. Ex. C (Def.'s Resp. to Pl.'s Interrog. # 29).) In addition, BMH has a license to use some of Duke's trademarks and intellectual property to promote this affiliation. (Id. Ex. D (Willis Aff. ¶ 10).) Harrell alleges that Duke has been paid $3,187,061.57 since 2000 pursuant to this affiliation.

In addition, Duke entered into a three-year contract with South Carolina Oncology Associates in 2006. Pursuant to this agreement, Duke "offers guidance in the clinical research process and the ability to offer more specialized clinical trials available to Duke and its research affiliates." (Id. 4.) However, South Carolina Oncology Associates retains all supervision over its patients. (Id.) In return, Duke is paid a research fee of $10,000 per year. (Def.'s Mem. Supp. Nov. 9, 2007, Mot. Dismiss Ex. B (Paul Lindia ("Lindia") Depo. 38-39).)

Duke also has contact with South Carolina through Duke Home Infusion, a wholly-owned entity that focuses on follow-up care of patients who have been treated at Duke Hospital in Durham, North Carolina. (Def.'s Mem. Supp. Nov. 9, 2007, Mot. Dismiss 4.) Duke Home Infusion contracts with nursing agencies that provide follow-up care at patients' homes, including patients from South Carolina. (Id. Ex. B (Lindia Depo. 45-48) & Ex. D (Willis Aff. ¶

7

10).) Finally, the Plaintiff alleges that Duke has been paid $4,526,242.65 since 2001 by the State of South Carolina for medical services rendered to South Carolina residents.

While Duke indisputably has contacts with South Carolina, as outlined above, these contacts do not rise to the level sufficient to assert general jurisdiction over Duke. Duke's contacts with South Carolina consist of a limited number of isolated contracts with South Carolina entities, not the "systematic and continuous" contacts required for general jurisdiction. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (holding that general jurisdiction did not exist in Maryland when the defendant, among other things, made certain purchases in Maryland and "contracted in the years preceding the suits with a Maryland firm for some of its drug research"). In addition, the fact "[t]hat [Duke] derives revenue from treating [South Carolina] patients, sometimes in the form of payments from [South Carolina] Medicaid, does not alter the basic fact that it is not engaged in continuous and systematic activity, unrelated to the suit, in [South Carolina]." Harlow, 432 F.3d at 66 (internal quotation marks omitted). Further, Duke's annual revenue is approximately 1.8 billion dollars. (Def.'s Reply Supp. Nov. 9, 2007, Mot. Dismiss 4.) Based on this figure, the total income alleged by the Plaintiff to be generated from Duke's contacts with South Carolina from all years represents less than one percent of Duke's income for one year. See id.; Bradley v. Mayo Found., No. CIV.A. 97-204, 1999 WL 1032806, at *5 (E.D. Ky. Aug. 10, 1999) (unpublished) (holding that Kentucky did not have jurisdiction over defendant and noting that the revenue derived from Kentucky residents constituted less than 0.3 percent of defendant's total patient revenues).

> When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive.

> Conduct of a single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to general jurisdiction. Even continuous activity of some sorts by a corporation within a state is not enough to support general jurisdiction over the corporation. Only when the continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities may a court assert general jurisdiction over a corporate defendant.

Nichols, 991 F.2d at 1199 (internal quotation marks and citations omitted). It cannot be said that Duke's contacts with South Carolina are so extensive and substantial as to justify suit against it in this forum on matters unrelated to those contacts. Therefore, this court lacks general jurisdiction over Duke.

### B. Motion to Transfer

Pursuant to 28 U.S.C. §§ 1406(a) and 1404(a), this case may be transferred to another district if it is found to be "in the interests of justice." As an alternative to dismissal, Duke moves to have the instant case transferred to the United States District Court for the Middle District of North Carolina where Duke is located and where Harrell's treatment and alleged injury occurred. (Def.'s Mem. Supp. Nov. 9, 2007, Mot. Dismiss 26-28.) The Plaintiff agrees to such a transfer in the event the court finds that it lacks personal jurisdiction over Duke. (Pl.'s Mem. Opp'n Def.'s Nov. 9, 2007, Mot. Dismiss 3.) Therefore, because the court has found that jurisdiction does not exist over Duke in South Carolina and because it is in the interest of justice to do so, the instant case is transferred to the United States District Court for the Middle District of North Carolina. Based on the foregoing, Duke's motion to dismiss or, in the alternative, to transfer is denied in part and granted in part.

It is therefore

**ORDERED** that Duke's motion to dismiss or, in the alternative, to transfer, docket number 61, is granted in part. It is further

**ORDERED** that the instant action is transferred to the United States District Court for the Middle District of North Carolina. It is further

**ORDERED** that Duke's motion for extension of time to file dispositive motions, docket number 83, is moot.

**IT IS SO ORDERED.**

                                          s/Henry M. Herlong, Jr.
                                          United States District Judge

Greenville, South Carolina
January 7, 2008